**Teresita DE JESÚS, Plaintiff,**

v.

**Carlos ALVARADO and Jose R. Cobian, Defendants.**

**Civ. No. 86–0685 (JP).**

United States District Court,
D. Puerto Rico.

June 2, 1987.

Frank Rodríguez García, Ponce, P.R., for plaintiff.

Luis Blanco Matos, Federal Litigation Div. Dept. of Justice, San Juan, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action for injunctive relief and damages brought under 42 U.S.C. section 1983, in which plaintiff alleges that her constitutional rights to freedom of belief and association and to due process of law were violated. Plaintiff, Teresita de Jesús, alleged that she was reassigned to several different offices on the basis of her political affiliation. Defendants, the Executive Director of the Puerto Rico Electric Power Authority (PREPA), and the plaintiff's supervisor, were accused of designing and carrying out this course of conduct to harass plaintiff because of her politics. This Court has subject matter jurisdiction over the complaint under 28 U.S.C. sections 1331, 1343(3), and 1343(4).

As is the case with all civil cases before this Court, the parties met with the Court, pursuant to an Initial Scheduling Conference. *See* Fed.R.Civ.P. 16.[1] The Court has found these conferences essential to narrowing of factual and legal issues before the Court, prompt disposition of cases amenable to settlement, and effective case management. While it has been rare that a political discrimination case such as the instant one settles, trial should be more efficient if all parties heed the dictates of Rule 16 and a Rule 16 scheduling order, such as the one that issues from this Court's Initial Scheduling Conference. *Id.* Rule 16(f) Advisory Committee note. Several methods of ensuring compliance with the Initial Scheduling Order are outlined by Rule 16(f). That section provides that, upon a party's failure to obey such a Rule

16 order "the judge, upon motion or his own initiative, may make such orders provided in Rule 37(b)(2)(B), (C), (D)." *Id.* Rule 16(f). In turn, Rule 37(b)(2)(B) provides that, as sanction, the court may enter

> An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence.

*Id.* Rule 37(b)(2)(B). Rule 37(b)(2)(C) and (D) contain even stiffer sanctions, including dismissal part or all of an action, default judgment, and contempt of court. *See also* U.S.Dist.Ct.P.R. R. 314.4.

This Court has found that a detailed Initial Scheduling Conference Order best serves the parties, the Court, and the purposes behind Rule 16. *See generally* Pieras, *Judicial Economy and Efficiency Through the Initial Scheduling Conference: The Method,* 35 Cath.U.L.Rev. 943 (1986) [hereinafter Pieras, *The Method* ]. The mechanisms that may be used within the Initial Scheduling Order can be tailored to fit each case.

In political discrimination cases, such as the instant case and others with which this District is ever increasingly familiar, there are several factual issues that are common, easily ascertainable, and essential for the proper prosecution of or defense against these suits. To simplify matters for all parties, in the Initial Scheduling Conference Order in this case the Court entered the following concerning some of these common factual disputes:

III. *Contested Facts:*

1. Plaintiff alleges that she is a member of the NPP [New Progressive Party].

2. Plaintiff alleges that her political affiliation was a matter of common knowledge at PREPA.

---

1. **Pretrial Conferences; Objectives**

In any action, the Court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial for such purposes as

(1) expediting the disposition of the action;

(2) establishing early and continuing control so that the case will not be protracted because of lack of management;

(3) discouraging wasteful pretrial activities;

(4) improving the quality of the trial through more thorough preparation; and

(5) facilitating the settlement of the case. Fed.R.Civ.P. 16(a).

3. Plaintiff alleges that Isabel Pérez Escobar replaced plaintiff as Supervisor of Personnel Files and Mail Section.

4. Plaintiff alleges Isabel Pérez Escobar is a member of the PDP [Popular Democratic Party].

*The Court ORDERS:* The defendant is to answer with explanation, if necessary, the above statements with an affirmative or negative statement on or before September 26, 1986. If not answered, the statements will stand as stipulated facts.

Counsel, who was personally notified of this Order at the September 10 Initial Scheduling Conference, had over two weeks to make his reply. The Court's Order mandated *some* reply, either affirmative or negative. A phone call or two, asking information from his clients, the sort of task every litigator engages in, would have given the answer. Sworn statements are not impossible to obtain in a fortnight. The Court's Order was not obeyed.

 Automatic sanctions embedded in the Initial Scheduling Conference Order have been used in appropriate circumstances. *See* Pieras, *The Method,* 35 Cath.U.L. Rev. at 952–53. Given the nature of this case and the type of contested facts to be resolved at an early stage in the litigation, an embedded automatic sanction was wholly appropriate. Counsel was obligated to give some response but failed to do so. Pursuant to Rules 16(f), 37(b)(2)(B), and Local Rule 314.4, these four items became stipulated for the purposes of this litigation. *See* 8 C. Wright & A. Miller, Federal Practice and Procedure § 2289 n. 65 (1970 & Supp.1986), and cases cited therein (discussing preclusion orders as an appropriate

sanction); *see also Atlas Truck Leasing, Inc. v. First NH Banks, Inc.,* 808 F.2d 902, 903–04 (1st Cir.1987) (trial court "has wide latitude in formulating pretrial orders and in imposing sanctions on parties who fail to comply"). This sanction was reiterated in a bench ruling during trial.[2] To allow defendants to contest these matters at trial would have been unfair to plaintiff, who prepared the case in accordance with the Initial Scheduling Conference Order.

Accordingly, the facts adduced through the Initial Scheduling Conference Order, other stipulations, and the four-day trial are these:

Plaintiff was a career employee carrying a classification M3, indicating a third-level managerial post. The title she held was "Supervisor of Personnel Files and Mail Section," in the Personnel Division. A known member of the New Progressive Party, plaintiff was replaced in her duties, functions, and authority as Supervisor of Personnel Files and Mail Section by one Isabel Pérez Escobar, a member of the Popular Democratic Party after the PDP became the governing administration in January 1985. Defendant Alvarado had been designated head of PREPA as part of the new administration. Defendant Cobian was, in turn, appointed head of the Personnel Division by Alvarado. Cobian presently holds the title of Director of Human Resources. On May 3, 1985, Teresita de Jesús was notified that she was to work in the Purchasing Department, effective May 6. Upon the request of her husband, also a PREPA employee, she was taken out of the Purchasing Department and moved to another office. On February 23, 1986, plaintiff was again given duties at another loca-

---

**2.** The Court refrained from imposing more severe sanctions. Fed.R.Civ.P. Rule 37(b)(2)(C), (D); U.S.Dist.Ct.P.R. Rule 314.4.

The 1983 Amendments to the Federal Rules of Civil Procedure were designed "to reinforce the rule's intention to encourage forceful judicial management." Fed.R.Civ.P. 16(f) Advisory Committee note. The amendments, to Rules 11, 16, and 26, were necessary to help stem the rising tide of unnecessary cost, delay, and abuse that had come to characterize the pretrial stage of litigation. Nelken, *Sanctions Under Amended Federal Rule 11—Some "Chilling" Problems in*

*the Struggle Between Compensation and Punishment,* 74 Geo.L.J. 1313 & nn. 1–5 (1986). Although "forceful judicial management" is not without its critics, *e.g.,* Resnik, *Managerial Judges,* 96 Harv.L.Rev. 374, 431 (1982), it is within the sound discretion of trial court judges, the front line of defense against the judiciary grinding to a halt, that decisions such as the sanction in this case must rest. *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 642, 96 S.Ct. 2778, 2780, 49 L.Ed.2d 747 (1976); *Atlas Truck Leasing,* 808 F.2d at 903.

tion. These duties were comprised mostly of feeding information to the authority's databases via a computer terminal. This is essentially a clerical assignment. Throughout, de Jesús' position description and job title remained unchanged. Although she was no longer in the Personnel Files and Mail Office, and despite the fact that she no longer supervised anyone, she still carried the title "Supervisor of Personnel Files and Mail Section."

■ In a special verdict, the jury found that: (a) plaintiff's political affiliation was the substantial and motivating factor in the reassignments of plaintiff; (b) her reassignments were accomplished without due process of law; and (c) defendants' conduct towards plaintiff was discrimination against her because of her political beliefs and therefore in violation of Puerto Rico personnel laws. For the purpose of rendering judgment on the claims for injunctive relief, the Court joins in the jury's findings as having been established by a preponderance of the evidence. The jury awarded $10,000.00 in compensatory damages for pain and suffering to be paid by both defendants.[3] The jury also assessed $5,000.00 in punitive damages against each of the defendants individually. Remaining to be determined are the imposition of additional civil liability under Puerto Rico antidiscrimination law, whether injunctive relief should issue, and whether plaintiff should recover attorney's fees. We address these seriatim.

### I. *Puerto Rico Civil Liability*

Section 136 of Title 29 of the Laws of Puerto Rico Annotated reads, in part:

Any employer who dismisses, suspends, refuses to reinstate in his job, demotes, reduces the pay, or increases the working hours of, or imposes or attempts to impose heavier working conditions on, any employee or ex-employee; or in any way discriminates against him, or threatens to commit any such act, on the grounds of his affiliation with a particular political party, shall be civilly liable for a sum equal to double the amount of damages he may have caused the said employee or ex-employee through such action ... The court may also direct the employer to reinstate the laborer in his employ, and to desist and cease from committing the act in question.

■ Section 146 of the same title also imposes double liability for discrimination in employment based on race, color, sex, social or national origin or social position, political or religious beliefs. 29 L.P.R.A. § 146 (1985). Plaintiff prayed for such relief as part of the pendant state claims to the action under 42 U.S.C. section 1983. The jury specifically found defendants had violated Puerto Rico antidiscrimination statutes by their reassignments of plaintiff. Accordingly, double damages should lie.

The Court is not convinced, however, that the punitive damages awarded by the jury should be doubled. We decline to do so for two reasons. First, it cannot fairly be said that punitive damages are the sort of "damages [defendants] may have *caused* the said employee." 29 L.P.R.A. § 136 (emphasis supplied). Similarly, under the parallel provision of section 146, punitive damages are not "damages *sustained* by the employee ... on account of such [discriminatory] action." 29 L.P.R.A. § 146(a)(1) (emphasis supplied). Punitive damages are assessed not as compensation for injury suffered, but for punishment of the tortfeasor. Punitive damages "are designed by the law to punish extraordinary misconduct." *Fishman v. Clancy*, 763 F.2d 485, 489 (1st Cir.1985). Because they are damages that fall outside of the definition of those that are doubled by Puerto Rico law, the Court shall not enter judgment doubling punitive damages. Second, it is clear that the legislature intended a punitive cast to these provisions. To punitively double damages already punitive would be redundant, and could lead to an outlandish award. The jury meted out what punishment is thought proper, and the Court will not disturb that considered calculation. Judgment will be entered,

---

**3.** The defense of qualified immunity was withdrawn at the Initial Scheduling Conference.

therefore, doubling the awarded compensatory damages alone.

## II. *Injunctive Relief*

■ Plaintiff's complaint claimed that her reassignments and transfers were because of her political affiliation and deprived her of property without due process of law. These separately state claims under the first and fourteenth amendments to the United States Constitution.

### A. *First Amendment Claim*

The jury, in its special verdict, specifically found that plaintiff's political affiliation was the substantial and motivating reason for her reassignments. There is nothing in the record that could cause the Court to come to a different conclusion and, as previously noted, the Court's findings do not differ from the jury's.

The purpose behind defendants' conduct in this case was to demonstrate to the employees and those associated with PREPA that the power to hire, fire, manage, supervise, and otherwise control employment resided in a particular political party rather than in a particular new administration. In order to accomplish such purpose, defendants had to discriminate against the plaintiff because of her political belief and in so doing, defendants knowingly and intentionally harassed, and abused de Jesús in violation of her constitutional rights. This has been done by taking away from her the imprint of authority which carries with it the respect of subordinates, and by telling the employees of PREPA and the community that those not affiliated with the Popular Democratic Party are out of power and do not deserve and should not be given the respect their positions entail. The message sent to the community in general was that they must cater to the politicians of the victorious party. All this was done with political gain as the only purpose in mind. As a result of being able to control the administration through such conduct, defendants intend to put themselves on a position to make new converts to their party, thus affecting the result of the 1988 election and perpetuating themselves in power.

The government established by the founders of our nation is a government run for the benefit of all the people, not for the purpose of perpetuating the political party in power. Executive officials who insist on violating the civil rights of government employees to replace them with their cronies only prove that they have put their desire to stay in power and in office ahead of all other considerations. This is dangerously akin to a "president-for-life" syndrome. These motives and actions contravene the constitutional mandate which aims for the continuity of democracy and, above all, the preservation of freedom.

The negative effects of patronage practice on the free and efficient functioning of our government has been vigorously noted by the highest courts of the United States and Puerto Rico. *E.g., Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547; *Juan Hermán Colón v. Corporación de Renovación Urbana y Vivienda,* 84 JTS 52 (P.R.1984). The threat latent in conditioning public employment on partisan support is well expressed in *Elrod v. Burns,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547. First, the practice exacts a ruthless toll on the individual employee's ability to act according to his beliefs and to associate with others of like political persuasion, thus diminishing support for his political party. *Id.* at 355–6, 96 S.Ct. at 2680–1. Secondly, the free functioning of the electoral process suffers because competing political interests are not supported. The Supreme Court aptly stated the problem:

Conditioning public employment on partisan support prevents support of competing political interests. Existing employees are deterred from such support, as well as the multitude seeking jobs. As government employment, state or federal, becomes more pervasive, the greater the dependence on it becomes, and therefore the greater becomes the power to starve political opposition by commanding partisan support, financial and otherwise. Patronage thus tips the electoral process in favor of the incumbent party, and where the practice's scope is sub-

stantial relative to the size of the electorate, the impact on the process can be significant.

*Id.* at 356, 96 S.Ct. at 2681.

■ Because, on paper, de Jesús retained the same job and the same wages and benefits, she suffered no pecuniary loss on that account. The jury concluded, however, that she had suffered by this deprivation of federal and state rights and that she must be compensated. Nothing that the jury could do, however, could stop defendants from continuing this political harassment. Plaintiff's injuries will continue until this course of conduct is halted. In balancing the equities of the situation to see if injunctive relief should issue, the Court concludes that defendants could suffer no harm by abiding the Constitutions of the United States and Puerto Rico, nor by obeying the civil service law of Puerto Rico. The public, likewise, can only be well served by a government that obeys the law. The Court shall enter judgment ordering, adjudging, and decreeing that defendants cease and desist from reassigning plaintiff based on her political affiliation and restoring plaintiff to her proper post in the civil service.

### B. *Fourteenth Amendment Claim*

■ The jury found that defendants' conduct deprived de Jesús of property without due process of law. Plaintiff's property interest in her public employment is defined by statute, *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 538–39, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494, 501 (1985). As a career employee, de Jesús could be removed only for cause. 3 L.P.R.A. § 1336(4) (Supp.1985); *Jiménez Fuentes v. Torres Gaztambide,* 807 F.2d 236, 242 (1st Cir.1986) (en banc), *cert. denied,* —— U.S. ——, 107 S.Ct. 1888, 95 L.Ed.2d 496 (1987). The applicable statute authorizes transfers, however, "at the request of the employee, or when they answer to the needs of the service as established by regulations, and when the transfer is not onerous to the employee." 3 L.P.R.A. § 1334(5) (Supp. 1985).

Although her job title remained unchanged throughout, de Jesús was moved from one office to another and given different duties that she considered inferior to her previous supervisory work. As such, she claimed and the jury and this Court accepted, that these reassignments were functionally transfers. The transfer provision of the civil service code is clear that "[t]ransfers may not be used as a disciplinary measure nor shall they be made arbitrarily." *Id.* Any motivation for a personnel action, such as a transfer, that falls outside of the legitimate agency interests must be termed "arbitrary." Political affiliation as a legitimate interest in plaintiff's transfers was not argued and there was no evidence before the jury or the Court to that effect. Within plaintiff's property right in continued employment, she had a right defined by statute to be free from arbitrary transfer.

On this fourteenth amendment ground, as with plaintiff's first amendment claim, the Court shall order defendants to cease and desist from arbitrary transfers and shall order full compliance with applicable personnel regulations. Any further deviation from the proper administration of the public utility in this case shall also be punishable, then, as contempt of this Court.

### III. *Attorney's Fees and Costs*

As the prevailing party, plaintiff is entitled to attorney's fees and costs. 42 U.S.C. § 1985. A verified fee application shall be filed within thirty days. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945 (1st Cir.1984).

Judgment will be entered accordingly.

IT IS SO ORDERED.